```
                                                         FILED
                                                    IN CLERK'S OFFICE
                                                  U.S. DISTRICT COURT E.D.N.Y.
                                                    ★ JUL 27 2011 ★
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BROOKLYN OFFICE

------------------------------------------------------------- X

PATRICK LEDGER,

             Plaintiff,

-against-

THE CITY OF NEW YORK, THE NEW YORK CITY
POLICE DEPARTMENT, DETECTIVE JEFFREY KATZ,
Shield No. 7679, SERGEANT BRIAN O'TOOLE, Shield
No. 1378, DETECTIVE RONALD MARTINY, Shield No.
12797, JANE DOES 1-2,

             Defendants.

------------------------------------------------------------- X

09-CV-2227 (ARR) (LB)

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

Plaintiff, Patrick Ledger, brings this action pursuant to 42 U.S.C. § 1983, alleging that Sergeant Brian O'Toole and Detective Ronald Martiny of the New York City Police Department ("NYPD") used excessive force by shooting him and beating him at the time of his arrest. Now before the court is defendants' motion for summary judgment. For the reasons explained below, the motion is denied.[1]

## I. BACKGROUND[2]

At around rush hour on November 13, 2006, near a crowded subway station and bus stop in Queens, plaintiff pointed a large semiautomatic weapon in the air and discharged five rounds while yelling incoherently. Defendants' Statement of Undisputed Facts Pursuant to Local Civil

---

[1] Plaintiff's complaint asserted additional claims against Detective Jeffrey Katz, the City of New York, and the NYPD, which plaintiff has subsequently withdrawn. See Declaration of Andrew F. Plasse, dated May 27, 2011 ("Plasse Decl.") ¶¶ 2-5. Although plaintiff's counsel has not explicitly withdrawn them, the court deems plaintiff's state-law claims against defendants O'Toole and Martiny to be withdrawn or abandoned because he does not address them in his opposition to defendants' instant motion. In the alternative, these claims are barred by plaintiff's failure file a notice of claim and a complaint within the time limits established by law. See N.Y. Gen. Mun. L. §§ 50-(e), 50-(i)(1)(c).

[2] Unless otherwise noted, the following facts are not in dispute.

1

Rule 56.1 ("Def. 56.1") ¶¶ 8-9, 20-26. The NYPD immediately received several 911 calls, id. ¶¶ 28-38, and Sergeant O'Toole and Officer Martiny (together, the "Officers") responded to the scene, id. ¶¶ 45-58.

When plaintiff heard the Officers' police sirens and saw their car, he began to run away. Id. ¶¶ 64-65. As the Officers pursued plaintiff on foot, they observed him reach into his bag and remove a large firearm which they believed to be a machine gun. Id. ¶¶ 66-70. They observed him point it in their direction, and then they heard a clicking sound. Id. ¶¶ 73-74.

Still in possession of his firearm, plaintiff went through an alleyway into a parking lot. Id. ¶¶ 75-78, 81. There he crouched down between two vehicles that were parked parallel to a cement wall with a chain link fence on top of it. Id. ¶¶ 79-80; 82. The Officers pursued plaintiff into the parking lot. Id. ¶¶ 83-87.

What happened next is the subject of dispute. According to the Officers, plaintiff ignored their commands to drop his firearm. Id. ¶¶ 89-91, 102. Instead, he held it in both hands, stood, pointed it at them, and pulled the trigger, discharging rounds. Id. ¶¶ 88, 92-97. The Officers returned his fire with their 9mm service weapons. Id. ¶¶ 98-100, 103. Then, after crouching down and standing up several times and still holding his firearm, plaintiff began climbing the cement wall and attempting to scale the chain-link fence. Id. ¶¶ 101-02, 104-05. Holding the fence with one hand, plaintiff again pointed his firearm at the Officers. Id. ¶¶ 105-06. At that moment, Officer Martiny fired once more, striking plaintiff on the left side of his left eye and causing him to fall to the ground on the near side of the fence. Id. ¶¶ 107, 111-12. The officers then observed his firearm lying on the far side of the fence. Id. ¶ 113. Martiny then placed plaintiff in handcuffs with Sergeant O'Toole's assistance. Affidavit of Ronald Martiny, dated

Dec. 23, 2010 ("Martiny Aff.") ¶ 76; Affidavit of Brian O'Toole, dated Dec. 23, 2010 ("O'Toole Aff.") ¶ 84. Thereafter, neither officer struck plaintiff in any way. Def. 56.1 ¶¶ 115-18.

According to plaintiff, he never pointed or fired his weapon at the Officers while in the alleyway. Deposition of Patrick Ledger, Apr. 27, 2010 ("Pl. Dep.") at 115. Instead, the Officers were shooting at him while he crouched between the cars, so he threw his gun over the fence and yelled "don't shoot, don't shoot, don't shoot." Id. at 112-14, 116. Unarmed and saying "don't shoot," he put his hands in the air and stood up slowly. Id. at 114-16. The alley was sufficiently lit for the Officers to see that he was unarmed, especially given the large size of the firearm that he had previously been holding. Id. at 115. Then plaintiff was shot in the head. Id. at 116. After he was shot, the Officers beat plaintiff and "busted [his] head open" until he was unconscious. Id. at 116-17, 150.

After plaintiff was arrested, the NYPD recovered evidence from the scene, including two live .45-caliber bullets and a bag containing an extra magazine, from the space where plaintiff had crouched; a .45-caliber Masterpiece ACP firearm was recovered from the far side of the chain-link fence. Def. 56.1 ¶¶ 129, 135-138, 140; NYPD Crime Scene Unit, Re-Cap Report ("Crime Scene Report"), annexed as Ex. P to Declaration Philip DePaul, dated Dec. 23, 2010 ("DePaul Decl."). At the time that the firearm was recovered, its trigger was locked in the "safe" position. Def. 56.1 ¶ 140. No .45-caliber bullet casings were recovered from the parking-lot area. See Crime Scene Report.

On April 17, 2008, plaintiff pleaded guilty in Queens County Supreme Court to two counts of attempted murder in the second degree. Def. 56.1 ¶¶ 141-42, 161; People v. Ledger, Indictment No. 3140-06, Transcript of Apr. 17, 2008 Proceedings ("Plea Transcript"), annexed as Ex. C to DePaul Decl. During his plea allocution, he admitted that on November 13, 2006, at

3

an address in Queens, he had attempted to cause the deaths of O'Toole and Martiny by firing a handgun in their direction. Def. 56.1 at ¶¶ 157-60. For his crimes, plaintiff was sentenced to thirteen years imprisonment. Id. ¶ 162.

## II. DISCUSSION

Defendants move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. They argue, first, that plaintiff is collaterally estopped by his criminal conviction from arguing that he did not fire a handgun at the Officers with the intent to kill them. Second, they argue that the Officers did not violate plaintiff's Fourth Amendment rights by using excessive force against him. Finally, they argue that they are entitled to qualified immunity for their actions.

### A.   Standard of Review

Under Rule 56(c), a moving party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986). "'While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party . . . materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law.'" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted)). In determining whether there is a genuine issue of material fact, "the district court is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew

credibility assessments." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (citing Anderson, 477 U.S. at 255).

B.   **Collateral Estoppel**

"[I]ssues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 83 (1984); see Biggs v. City of New York, No. 08-CV-8123, 2010 WL 4628360, at *5 (S.D.N.Y. Nov. 16, 2010) (holding that plaintiff was collaterally estopped from disputed facts to which he allocuted in a plea hearing). Under New York law, the collateral estoppel doctrine precludes a party from relitigating an issue "if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999)) (internal quotation marks omitted). "The burden of proof with respect to whether an issue is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion." Id. This burden has been analogized to "the burden generally imposed on the moving party to make a prima facie demonstration of entitlement to summary judgment." Ryan v. New York Telephone Co., 62 N.Y.2d 494, 502 (1984).

Defendants argue that plaintiff is estopped from arguing that he did not fire on the Officers in the parking lot because he allocuted to having attempted to cause their deaths by firing a handgun in their direction. Plaintiff responds that his allocution did not specify the exact location and time at which this attempted murder occurred. He submits, therefore, that he could have attempted to kill the Officers early in the chase, when they admittedly observed him point

his firearm in their direction and heard a clicking noise. On this account, plaintiff's current position that he did not fire upon the Officers in the parking lot is not inconsistent with his plea allocution, and he should not be precluded from asserting it. The court finds, therefore, that defendants have not met their burden to demonstrate that the specific issue of whether plaintiff fired on them in the parking lot was necessarily decided in the state criminal action. See Sullivan, 225 F.3d at 166 ("Any issue of preclusive effect depends on the specific facts and circumstances of each case.").

C. **Excessive Force**

In order to establish his § 1983 claim for excessive force under the Fourth Amendment, plaintiff must show that the Officers' use of force was "'objectively unreasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989); Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004). "With respect to deadly force in particular, an officer's decision to use deadly force is objectively reasonable only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005) (internal quotation marks and citations omitted); see also Tennessee v. Garner, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). The reasonableness of the officer's decision "depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force." Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996).

Defendants maintain that they had probable cause to believe that plaintiff posed a serious threat of death or serious physical injury at the time that he was shot. They write:

> Even if the Court were to credit plaintiff's self-serving assertion that he did not have the gun in his possession at the time he was shot, then the Court must also look to plaintiff's admitted actions up to that point—taking out a large firearm, in a crowded area, raising it in the air, firing it into the air five times, running away from police officers, and crouching behind a car, all with the weapon in his possession—all of which would lead no reasonable officer to believe that plaintiff would safely surrender, and no reasonable juror to find that plaintiff's fourth amendment rights were violated.

Defendants' Reply Memorandum of Law ("Def. Reply") at 5. On defendants' motion for summary judgment, however, the court must also credit not only plaintiff's assertion that he did not have a gun in his possession at the time he was shot, but also his assertion that he was visibly unarmed and compliant, standing up slowly with his hands above his head. Plaintiff's averment of his safe surrender distinguishes this case from Gilbert v. French, cited by defendants, in which the Fifth Circuit found that it was reasonable for police officers to shoot a masked felon fleeing from a dangerous crime scene who may have slowed down momentarily to show his face and hands. See 364 Fed. Appx. 76, 81-83 (5th Cir. 2010). If a jury believed plaintiff in this case, it could find that defendants knew that he posed no significant or immediate threat at the moment that he was shot and, thus, that his Fourth Amendment rights were violated. Therefore, summary judgment must be denied.

In addition, plaintiff testified that he felt the Officers beat him while he was lying on the ground after being shot, although his injury prevented him from witnessing the beating. Defendants do not deny that such a use of force would be objectively unreasonable. Rather they argue that the court should enter summary judgment in their favor on this issue because plaintiff did not see this happen and therefore cannot offer any positive proof as to who exactly beat him. They cite Husbands ex rel. Forde v. City of New York for the proposition that summary

7

judgment is appropriate on an excessive force claim when the plaintiff is unable to identify his assailant. See No. 05-CV-9252, 2007 WL 2454106, at *11 (S.D.N.Y. Aug. 16, 2007), aff'd 335 Fed. Appx. 124 (2d Cir. 2009). In Husbands, the plaintiff alleged that one of several police officers on the scene kicked him once in the eye during his arrest, but he did not see which officer delivered the kick. Id. at *2-3, 7. His claim failed because, as the Second Circuit wrote on appeal,

> it does not seem that any of the named defendants are rational candidates. . . . The only individually named defendants who were on the scene were Officers Wong, Griffith, and Livingston, but Wong and Griffith did not participate in the arrest. And since Livingston was busy trying to put handcuffs on Forde, there is no basis for inferring that Livingston . . . was the one who kicked Forde in the head . . . .

Husbands, 335 Fed. Appx. at 129. In this case, there is no evidence that anyone other than O'Toole and Martiny was on the scene, and they are both rational candidates for beating plaintiff, who alleges several blows to his face and head. Drawing all reasonable inferences in plaintiff's favor, the court finds that there is a genuine issue of material fact as to whether defendants beat plaintiff after he had been shot.[3] Therefore, summary judgment is denied on this issue also.

## D. Qualified Immunity

"[E]ven officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection 'from the sometimes hazy border between excessive and acceptable force.'" Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003) (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)). Police officers are entitled to qualified immunity for their actions unless it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted. Id.; see also Loria v. Gorman, 306 F.3d 1271, 1282 (2d Cir.

---

[3] In addition, the court notes that the Officers' affidavits state only that they did not strike plaintiff after he was handcuffed; they do not specifically address what force may have been used from the time plaintiff was shot to the time he was placed in handcuffs. See Martiny Aff. ¶¶ 76-80; O'Toole Aff. ¶¶ 84-88.

2002) ("Said differently, if the officer's conduct violated a right, we analyze the objective reasonableness of the officer's belief in the lawfulness of his actions.").

The court is cognizant that qualified immunity is "an immunity from suit rather than a mere defense to liability" and "is effectively lost if the case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Nevertheless, the court finds that genuine issues of material fact preclude a determination of defendants' entitlement to qualified immunity on the instant motion for summary judgment. Plaintiff has testified that he was visibly unarmed and fully compliant before he was shot. He has further testified that the Officers beat him as he lay wounded. If plaintiff can prove these facts at trial, it follows that no reasonable officer could have believed that the alleged use of force was reasonable.

## III. CONCLUSION

For the reasons set forth above, the court finds that genuine issues of material fact preclude summary judgment in this case. Defendants' motion is therefore denied.

SO ORDERED.

/Signed by Judge Ross/

Allyne R. Ross
United States District Judge

Dated:       July 21, 2011
              Brooklyn, New York